IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISCTRICT OF WEST VIRGINIA

**MISTY D. POTTS**, Administrator
of the **ESTATE OF JEROME POTTS,**

                  Plaintiff,

**v.**                                            Case No.   2:23-cv-00738

**WEST VIRGINIA UNIVERSITY
BOARD OF GOVERNORS,** as
Governing body for West Virginia
University, and **DUSTIN SPENCER, D.O.,**

                  Defendants.

## COMPLAINT FOR DAMAGES

      **NOW COMES** the Plaintiff, Misty Potts, Administrator of the Estate of Jerome Potts, by counsel, and asserts the following causes of action against the Defendants herein, as follows;

### JURISDICTION AND VENUE

1.     Jurisdiction is proper and is based on diversity of citizenship pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum of $75,000 and is between citizens of different states.

2.     Venue is proper pursuant to 28 U.S.C. § 1391 as all defendants are residents of the State of West Virginia and reside within the Southern District of West Virginia (this Judicial District). Venue is also proper pursuant to 28 U.S.C. §1391 as a substantial part of the events or omissions giving rise to the herein claims occurred within this Judicial District.

### PARTIES

3.     The Plaintiff, Misty D. Potts, ("Plaintiff") is the widow of the late Jerome A. Potts ("Decedent"). Plaintiff, at all relevant times herein, was and is a resident of Clarington, Monroe County, Ohio.

4. Decedent passed away on November 17, 2021 at the age of 56. Prior to his death, and at all times relevant herein, Decedent was a resident of Clarington, Monroe County, Ohio.

5. Decedent's Estate was opened in Monroe County, and Plaintiff was appointed Special Administrator of the Decedent's Estate by Order of the Probate Court of Monroe County, Ohio, on April 25, 2023. See Entry Appointing Fiduciary; Letters of Authority, attached hereto as **Exhibit A**.

6. Defendant, West Virginia University Board of Governors ("WVUBOG"), is a state board and the governing body for West Virginia University, which conducts business in Wood County, West Virginia, on its own behalf and by and through its employees and agents.

7. Upon information and belief, at all times material hereto, Dustin M. Spencer, D.O., was and is a physician licensed to practice medicine in the State of West Virgnia, and provided hospitalist services to patients at the medical facility identified as WVU Medicine Camden Clark Medical Center ("WVU") in the relevant medical records herein. Dr. Spencer's office address, per the West Virginia Board of Osteopathic Medicine, is 800 Garfield Avenue, Parkersburg, WV 26101.

## STATEMENT OF FACTS

8. Decedent sought medical care at WVU on October 31, 2021 for flank pain, nausea and vomiting. He had undergone right hip replacement surgery approximately one month earlier, on September 22, 2021. He was initially seen and examined by PA-C Tabitha Thomas, in conjunction with Thomas Farrah, M.D., through the facility's emergency department.

9. Initially, Decedent was febrile with a temperature of 38.4 degrees Celsius, blood pressure was recorded as high as 132/57, heart rate was recorded as high as 134, respiratory rate was recorded as high as 25, and oxygen saturations were 95% on room air.

10. Laboratory studies revealed Decedent's Complete Blood Count ("CBC") and Basic Metabolic Panel ("BMP") to be remarkable for a White Blood Cell ("WBC") count of 12.1 and glucose level of 186 but were otherwise unremarkable. Decedent's initial troponin level was 35, increasing to 49 on follow-up, and his Procalcitonin was 0.52.

11. A CT angiography of Decedent's chest, performed with IV contrast, revealed no evidence of pulmonary emboli. EKG revealed no ST elevated myocardial infarction ("STEMI"), but did reveal a nonspecific ST abnormality as well as sinus tachycardia.

12. PA-C Thomas communicated these findings to Internal Medicine / Hospitalist, Paul Abrams, M.D., and Dr. Abrams ordered Decedent to be admitted to his service for further medical evaluation and care. Decedent's admitting diagnosis was fever, unspecified cause, flank pain, nausea/vomiting and elevated troponin levels.

13. Decedent was initially examined by Dr. Abrams in the early morning hours of November 1, 2021. Dr. Abrams examined Decedent's right hip replacement surgical site, noting no postsurgical wound tenderness, erythema, draining, or worsening pain.

14. Dr. Abrams thereafter formed a differential diagnosis and plan of care for Decedent, which included a request for consult from Infectious Disease. Dr. Abrams also placed an order for serial troponin levels to be taken, as well as an order for a full dose aspirin daily to be administered to Decedent due to the aforementioned elevated troponin levels, which Dr. Abrams deemed to be "likely secondary to demand ischemia."

15. Dr. Abrams handed off attending duties to Dustin Spencer, D.O., and Dr. Spencer first examined Decedent on November 1, 2021 at 1615. No echocardiogram was ordered on this date and no cardiology consult was noted in the chart.

16. Dr. Spencer again rounded on Decedent at approximately 0834 the next day, November 2, 2021. Upon examination, Dr. Spencer revised the prior differential diagnosis of Decedent's 'fever of uncertain etiology' and included "possibly endocarditis versus septic arthritis." Dr. Spencer then ordered a transthoracic echocardiogram ("TTE"). Decedent's TTE study was performed on November 2, 2021 at 1207. The study was interpreted to show "moderate aortic stenosis with no obvious vegetation appreciated."

17. Dr. Spencer next rounded on Decedent at 0803 on November 3, 2021 and noted that the infectious disease team "felt as though [Decedent's] fevers are secondary to recent right hip replacement." The infectious disease team then rounded on Decedent later that day, and emphasized "Right anterior approach total hip arthroplasty incision appears clean, dry. No erythema." The infectious disease team then recommended that Dr. Spencer order a Transesophageal Echocardiogram ("TEE"), and this study was performed on November 5, 2021.

18. The results of the TEE were reported to Dr. Spencer on November 5, 2021, and included "moderate aortic stenosis, large perivalvular abscess and aortic vegetation." Dr. Spencer then modified the Decedent's primary problem as endocarditis of the aortic valve, aortic valve vegetation and bacterial aortic valve abscess, all of which are life threatening conditions. Despite the absence of any cardiology or cardiothoracic consult at that time, Dr. Spencer noted on November 5, 2021 that "cardiology recommended transfer to tertiary center."

19. The Decedent then remained hospitalized with infective endocarditis, aortic valve vegetation and bacterial aortic valve abscess while under the care of Dr. Spencer from November 4, 2021 to November 10, 2021. During that time, Dr. Spencer placed no orders for consult from cardiology, cardiothoracic surgery or any other specialty. Decedent's condition progressively worsened throughout his hospital stay.

20.     On November 10, 2021, Dr. Spencer handed off attending duties to John Onestinghel, M.D.  Dr. Onestinghel immediately ordered a cardiology consult to "to see and evaluate [Decedent] and make any recommendations for further treatment[,]" and subsequently ordered a cardiothoracic surgery consult approximately 24 hours later, on November 11, 2021.  Dr. Onestinghel also noted a discussion regarding the possibility of "going to Ruby" which, upon information and belief, is a reference to the West Virginia University's Heart and Vascular Institute in Morgantown, West Virginia.

21.     Notably, the WVU facility where Decedent languished for 7 days with life threatening infective endocarditis actively holds itself out "as one of the finest cardiac surgery programs in the United States."[1] Specifically:

> WVU Medicine Camden Clark Medical Center, through its partnership with the WVU Heart and Vascular Institute, has built one of the finest cardiac surgery programs in the United States, providing comprehensive cardiac care for patients with heart problems, including shortness of breath, chest pain, palpitations, high blood pressure, and vascular disease.
>
> Camden Clark Medical Center is the ONLY hospital in the Mid-Ohio Valley that offers award-winning heart care. As such, we are committed to working closely with our patients and their families to develop a comprehensive treatment plan – one that is grounded in trust and open communication and built on the notion that every patient deserves a compassionate care team, the only focus of which is to care for that patient and provide them the best possible outcome.
>
> Our cardiac surgeons offer a wide range of services – everything from mitral valve repair to cardiac bypasses. Specific surgeries include:
>
> Aortic surgery
> Atrial fibrillation surgery
> Bypass surgery
> Congenital heart surgery
> Hypertrophic cardiomyopathy surgery – septal myectomy
> Heart failure surgery – left ventricular assist devices, left ventricular reconstruction.

---

[1] Available at: https://wvumedicine.org/camden-clark/services/cardiac-care/

> Valve surgery
>
> Our surgeons also use the most advanced procedures, including minimally invasive cardiac surgery, robot-assisted cardiac surgery, transcatheter valve procedures (including Transcatheter Aortic Valve Replacement – TAVR), and percutaneous mitral valve treatments. The cardiac surgery team is on the forefront of using new technologies, procedures, and treatments for cardiac patients.

22. Moreover, the conversation Dr. Onestinghel had with the Decedent on November 10, 2021 should have been a conversation Dr. Spencer had with the Decedent on November 5, 2021.

23. The Decedent's EMTALA Form for Transfer, dated November 12, 2021, verified that Decedent's transfer to Cleveland Clinic was medically appropriate and necessary because the Decedent needed "heart valve replaced" which was a "treatment not within facility capabilities." However, per the WVU Heart and Vascular Institute's 2021 Annual Report, WVU touted the "world's first Robotic Aortic Valve Replacement Program" a "comprehensive aortic program" which "treats all forms of structural heart disease, including aortic and mitral valve disease." Furthermore:

> The WVU HVI Division of Cardiac Surgery is recognized as one of the top programs in the nation and the best program in West Virginia by providing the highest quality and most advanced cardiac surgical and robotic therapies available. The Division performs more than 1,200 operations annually with unique specialization in aortic surgery, advanced heart failure therapies, and nationally recognized robotic cardiac surgery.

24. Decedent died on November 17, 2021 as a direct result of the unnecessary delay and substandard medical care he was subjected to at WVU's facility in Parkersburg, West Virginia.

### CAUSE OF ACTION NO. 1: MEDICAL PROFESSIONAL LIABILITY

25. Plaintiff incorporates herein as if fully restated, Paragraphs 1 through 24 of the Complaint.

26. The applicable standard of care required a timely and appropriate cardiology and cardiothoracic surgery consult upon the finding moderate aortic stenosis, large perivalvular abscess and aortic vegetation per TEE performed on November 5, 2021.

27. The applicable standard of care required a timely and appropriate cardiology and cardiothoracic surgery consult upon the diagnosis of endocarditis of the aortic valve, aortic valve vegetation and bacterial aortic valve abscess.

28. The applicable standard of care required timely and appropriate surgical intervention upon the TEE findings and diagnoses set forth in the preceding paragraphs, and such interventions were well within the admitting facility's capabilities on November 5, 2021 to November 12, 2021.

29. The delay of timely and appropriate cardiology and cardiothoracic surgery consults, as well as the failure to surgically intervene in lieu of unnecessary transfer to a tertiary care facility was a breach of the standard of care.

30. For the reasons set forth herein, the Defendant health care providers failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and such failures were a proximate cause of Mr. Pott's death.

31. Additionally, the failures to follow accepted standards of care deprived Mr. Potts of a chance of recovery and increased the risk of harm to the patient, each of which was a substantial factor in bringing about the ultimate injury to the patient, and had these accepted standards of care been followed herein, it would have resulted in a greater than twenty-five percent chance that Decedent would have survived.

## CAUSE OF ACTION NO. 2: WRONGFUL DEATH

32. Plaintiff incorporates herein as if fully restated, Paragraphs 1 through 31 of the Complaint

33. The Defendants, through wrongful acts and neglect as set forth above, caused the death of Mr. Jerome Potts, and Plaintiff asserts a claim for Wrongful Death under section 55-7-5 of the West Virginia Code.

<u>Notice Also Given</u>:

34. The West Virginia University Board of Governors ("WVUBOG"), is a state board and the governing body for West Virginia University, which conducts business in Wood County, West Virginia, on its own behalf and by and through its employees and agents. Upon confirmation that Defendant, Dr. Spencer, is an employee or agent of WVUBOG during the relevant time period herein, the named parties would be amended as appropriate.

35. Alternatively, if Dr. Spencer is not an agent or employee of WVUBOG, and/or if WVUBOG is not the proper WVU entity, Plaintiff submits notice of this lawsuit to the following individuals and entities:

36. Notice is provided to "WVU Medicine" a/k/a "WVUMedicine" ("WVUM"), exemplar attached hereto and incorporated herein as **Exhibit B**, pp. 1-3, which for purposes of this litigation is believed to be part and parcel of WVUBOG. Alternatively, WVUM is an unknown person, sole proprietorship or other organization transacting business in Wood County, West Virginia, as well as a corporation, association, limited partnership, limited liability partnership, and/or limited liability company conducting business under an assumed name without certificate of trade name; application; and/or issuance of certificate of trade name. **Exhibit B**, pp. 1-3. WVUM conducts business at 800 Garfield Avenue, Parkersburg, WV 26102-0718

37. Per website available at: https://wvumedicine.org/careers/providers/, WVUM "is West Virginia's leading provider of advanced medical and surgical care" and purports to hire physicians and advanced practice providers for "Camden Clark Medical Center." See Webpage Capture, cited immediately above, attached hereto and incorporated herein as **Exhibit C.** Per: https://doctors.wvumedicine.org/?FindADoc%5Bquery%5D=spencer, Dustin Spencer, D.O., is a Hospitalist and "WVU Medicine Employed Provider." **Exhibit B**, p. 1.

38. Notice is provided to "WVU Medicine Camden Clark Medical Center" ("WVUMCCMC"), exemplar attached hereto and incorporated herein as **Exhibit D**, pp. 1-2, which for purposes of this litigation is believed to be part and parcel of WVUBOG. Alternatively, WVUMCCMC is an unknown person, sole proprietorship or other organization transacting business in Wood County, West Virginia, as well as a corporation, association, limited partnership, limited liability partnership, and/or limited liability company conducting business under an assumed name without certificate of trade name; application; and/or issuance of certificate of trade name. **Exhibit D**. WVUMCCMC conducts business at 800 Garfield Avenue, Parkersburg, WV 26102-0718.

39. Notice is provided to "WVU Heart and Vascular Institute" a/k/a "WVU Heart & Vascular Institute" a/k/a "WVUHeart&VascularInstitue" ("WVUHVI"), exemplar attached hereto and incorporated herein at **Exhibit E**, pp. 1-4, which for purposes of this litigation is believed to be part and parcel of WVUBOG. Alternatively, WVUHVI is an unknown person, sole proprietorship or other organization transacting business in Wood County, West Virginia, as well as a corporation, association, limited partnership, limited liability partnership, and/or limited liability company conducting business under an assumed name without certificate of trade name;

application; and/or issuance of certificate of trade name. WVUHVI conducts business at 800 Garfield Avenue, Parkersburg, WV 26102-0718.

40. Notice is provided to the West Virginia University Medical Corporation d/b/a University Health Associates ("UHA"). UHA is a West Virginia Corporation with a principal office address of One Medical Center Drive, P.O. Box 8059, Morgantown, WV 26506, with notice of process to be submitted to Christine Vaglienti, 1 Medical Center Drive, Hospital Administration, Morgantown, WV 26506. Per website available at: https://wvumedicine.org/careers/providers/, UHA is "West Virginia's largest multi-specialty physician practice [and] UHA operates and staffs clinics and hospitals throughout West Virginia and surrounding states. See **Exhibit C**.

41. Notice is provided to the West Virginia United Health System, Inc., d/b/a West Virginia University Health System and/or WVU Health System ("WVUH"). WVUH is a West Virginia Corporation with a principal office address of 1085 Van Voorhis Road, Suite 500, Morgantown, WV 26506, with notice of process to be submitted to Christine Vaglienti, 1238 Suncrest Towne Center, Morgantown, WV 26505.

42. Notice is provided to the West Virginia University Hospitals, Inc., d/b/a West Virginia Heart Institute ("WVUHHI"), WVUHHI is a West Virginia Corporation with a principal office address of One Medical Center Drive, P.O. Box 8059, Morgantown, WV 26506, with notice of process to be submitted to Christine Vaglienti, 1 Medical Center Driver, 1238 Suncrest Towne Center, Morgantown, WV 26506.

43. Notice is provided to Camden Clark Memorial Hospital Corporation d/b/a Camden Clark Medical Center is a West Virginia Corporation with a principal office address of 800 Garfield Avenue, Parkersburg, WV 26101, with notice of process to be submitted to "President and CEO", 800 Garfield Avenue, Parkersburg, WV 26101.

**PRAYER FOR RELIEF**

44. Plaintiff demands judgment in an amount to be determined by a jury for sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent; compensation for reasonably expected loss of income of the Decedent, as well as loss of services, protection, care and assistance provided by the Decedent; expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death; and reasonable funeral expenses, prejudgment interest and post-judgment interest as permitted by law, punitive damages, and all other damages permitted and available to Plaintiff and Estate under the facts so alleged herein.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

RESPECTFULLY SUBMITTED

**MISTY D. POTTS**, Administrator
of the **ESTATE OF JEROME POTTS,**

**By Counsel:**

*/s/ Ryan Q. Ashworth*

| | |
|---|---|
| Steven K. Nord, Esq. | (WV # 2748)(OH #37674) |
| Ryan Q. Ashworth, Esq. | (WV # 10451)(OH # 80798) |

**Ashworth Nord LLC**
*WV:* 314 Ninth Street, Suite 100B, Huntington, WV 25701
*OH:* 307 Putnam Street, Marietta, OH 45750
**Mailing:** **P.O. Box 240, Marietta, OH 45750**
**P.O. Box 126, Huntington, WV 25706**
Telephone: Main: (740) 371-7121
RQA Direct: (740) 371-7122
SKN Direct: (740) 760-1604
Fax: (740) 760-1601
Email: steve.nord@ashworth-nord.com
ryan.ashworth@ashworth-nord.com
jenny.honaker@ashworth-nord.com
Website: www.ashworth-nord.com